## WILMINGTON TRUST CO. v. UNITED STATES.

No. L–340.

Court of Claims.
July 5, 1932.

This case having been heard by the Court of Claims, the court, pursuant to the stipulation of the parties, makes the following special findings of fact:

Hamilton M. Barksdale, a citizen of Delaware, on February 29, 1916, filed his individual income tax return for the calendar year 1915 showing a tax due of $9,629.49, which amount was paid on June 27, 1916. Barksdale died October 18, 1918, and the Wilmington Trust Company was appointed adminis-

trator with the will annexed on November 27, 1918.

In August, 1920, the Commissioner assessed against Barksdale an additional tax of $108,155.90 for the year 1915, and in September, 1920, a claim for the abatement of this sum was filed.

March 15, 1919, the Wilmington Trust Company filed an individual income tax return of the income of Barksdale for the period January 1 to October 18, 1918, prior to his death, showing a tax of $50,085.50 to be due. This tax was assessed and paid in four installments of $12,521.38 on March 15, 1919, $12,521.37 each on July 11 and September 8, 1919, and $12,521.38 on December 5, 1919. In June, 1920, the Commissioner assessed an additional tax of $6,022.06 for this period, which amount was paid July 30, 1920, making a total payment for this period of $56,-107.56.

On March 15, 1919, the Wilmington Trust Company, as administrator of the estate of Barksdale, filed an income tax return for the estate for the period from October 18 to December 31, 1918, showing a tax of $38,-686.77 to be due. This tax was paid in four installments on March 15, July 11, September 8, and December 5, 1919. In May, 1920, the Commissioner assessed an additional tax of $56.31 for this period, which was paid June 10, 1920.

On March 9, 1922, the Wilmington Trust Company, as administrator of the estate of Barksdale, filed a claim for credit of $103,-940.14 against an additional tax of $108,-155.90 assessed for 1915. The claim set forth in detail that the total overpayment claimed as credit consisted of the total tax of $56,107.-56 paid for the period January 1 to October 18, 1918, on March 15, June 15, September 15, and December 15, 1919, and on July 30, 1920, and of $47,832.58 for the year 1919 paid January 13, 1920. No mention was made in this claim with respect to the taxable period October 18 to December 31, 1918, and no portion of the tax paid by the estate upon its income for this period was included in the amount of $103,940.14 claimed as a credit.

On November 24, 1922, the Commissioner approved a schedule showing an overassessment of $47,832.58 for the calendar year 1919, which was applied as a credit against 1915 additional tax assessed by the Commissioner in August, 1920, the collection of which was stayed by the filing of a claim for abatement.

On February 8, 1924, the Commissioner approved a schedule of overassessments which included overassessments in favor of plaintiff of $35,264.14 for the period of January 1, 1918, to October 18, 1918, and $21,-918.43 for the period October 18, 1918, to December 31, 1918. This schedule was duly sent to the collector and by him returned to the Commissioner, together with a schedule of refunds and credits, and the entire amount of the overassessment of $35,264.14 was applied as a credit against the additional tax for the year 1915. Of the overassessment of $21,-918.43, the amount of $20,843.42 was also applied as a credit against the 1915 additional tax and the balance of $1,075.01 was shown as refundable. On May 27, 1924, the Commissioner signed the schedule of refunds and credits authorizing the disbursing clerk of the Treasury Department to issue checks for the amounts found by the Commissioner to be refundable to the several taxpayers whose names appeared thereon.

Thereafter the Commissioner of Internal Revenue deleted the overassessment of $21,-918.43 from the schedule of refunds and credits referred to above and requested the collector of internal revenue to procure documentary evidence showing the appointment of plaintiff as administrator of the estate of Barksdale. After this documentary evidence had been furnished, the Commissioner signed on August 28, 1924, a supplementary schedule of refunds and credits which was identical with the one previously signed and showed that of the overassessment of $21,918.43 the same credit had been made and the same amount was refundable.

On September 11, 1924, pursuant to authority given by the Commissioner the disbursing clerk of the Treasury Department issued a check for $1,075.01, which was transmitted to the plaintiff, together with a certificate of overassessment for $21,918.43.

W. N. Wood, of Washington, D. C., for plaintiff.

Lisle A. Smith, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (D. Louis Bergeron, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The Wilmington Trust Company is the administrator, with the will annexed, of the estate of Hamilton M. Barksdale, deceased,

and seeks to recover interest under section 1019 of the Revenue Act of June 2, 1924 (26 USCA § 153 note) on $21,918.43, being the amount of an overpayment by the estate in respect of its income for the taxable period October 18 to December 31, 1918, subsequent to Barksdale's death; $20,843.42 of this overpayment was credited by the Commissioner against a part of a deficiency for 1915. The balance of $1,075.01 was refunded by Treasury check dated September 11, 1924.

Plaintiff bases its claim on the allegation that the credit and refund were allowed within the meaning of the Revenue Acts on August 28, 1924, when the Commissioner relisted the amounts on a "supplemental" schedule of refunds and credits after this item, numbered 5, had been "deleted" from a previous schedule of refunds and credits containing entries with respect to overpayments by a number of taxpayers which had been approved by the Commissioner May 27, 1924. Inasmuch as the date, August 28, 1924, was after the expiration of the period of limitation within which the Commissioner could legally allow an overpayment for the taxable period October 18 to December 31, 1918, and credit or refund the same, plaintiff contends that the claim for credit filed March 9, 1922, was sufficient authority for the Commissioner's allowance beyond the statute of limitation and that the Commissioner in fact allowed the credit and refund for this taxable period on the basis of the claim for credit filed.

Counsel for the defendant resist plaintiff's claim for interest on the grounds, first, that the claim for credit filed March 9, 1922, was not a claim for credit for the taxable period October 18 to December 31, 1918, inasmuch as it made no mention whatever of any overpayment for this period; that the claim specifically and definitely related to an overpayment of $56,107.56 paid in installments on March 15, June 15, September 15, and December 15, 1919, and on July 30, 1920, with respect to the tax on the income of the decedent, Barksdale, for the period prior to his death, January 1 to October 18, 1918, and an overpayment of $47,832.58 on January 13, 1920, with respect to the tax on the income of the estate of Barksdale for the year 1919; second, that if the credit of $20,843.42 and the refund of $1,075.01 were allowed by the Commissioner on August 28, 1924, when he relisted these items on a supplemental schedule, such allowance was beyond the period of limitation within which he could allow a credit or refund without a claim and was therefore illegal, since the claim for credit filed by plaintiff was not a claim with respect to the overpayment for the period October 18 to December 31, 1918, on which interest is claimed.

We are of opinion that the defendant is correct in its contention that plaintiff filed no claim for credit with respect to the overpayment for the period October 18 to December 31, 1918, on which interest is claimed. The claim for credit relied upon by plaintiff set forth that an additional tax of $108,155.90 had been assessed for 1915 and claimed a credit against that amount of $103,940.14. The overpayments, for which credit was claimed, were payments totaling $56,107.56 made on March 15, June 15, September 15, and December 15, 1919, and on July 30, 1920, in respect of the tax on the income of the decedent prior to his death for the period from January 1 to October 18, 1918, and the payment of $47,832.58 made January 13, 1920, with respect to the tax on the income of the estate of Barksdale for the year 1919. No mention whatever was made by plaintiff in the claim with respect to any overpayment for the taxable period October 18 to December 31, 1918, and the total amount claimed as a credit did not include any amount with respect to the tax paid for that period. The document filed therefore gave the plaintiff no greater rights with respect to any overpayment for the period ending December 31, 1918, than if the claim had not been made. When the claim for credit was received by the Commissioner serial number 332708 was placed thereon. In the course of his audits the Commissioner determined overassessments for the taxable period January 1 to October 18, 1918, the taxable period October 18 to December 31, 1918, and for the taxable year 1919. When the overassessments for the two taxable periods in 1918 were entered upon the schedule of overassessments, approved February 8, 1924, and upon the original and supplemental schedule of refunds and credits, the number placed by the Bureau on the claim for credit was entered in column 2 under the heading "Certificate of Overassessment or Claim Number." Plaintiff insists, therefore, that, by placing the serial number of the claim filed opposite the overassessment for the period October 18 to December 31, 1918, as shown on the schedule of overassessments, the Commissioner treated the claim filed as a claim for credit for the taxable period October 18 to December 31, 1918. The contents of the claim filed, however, show very plainly that it had no reference to the period ending December 31, 1918, and the

mere fact that in the preparation of the schedules the serial number given to the claim filed was entered on the schedules opposite the entry of the assessment for the period involved, as well as the overassessment for the period January 1 to October 18, 1918, for which the claim was filed, does not establish that the Commissioner treated it as a claim for the period ending December 31, 1918, nor do we think that such a notation under the circumstances would be binding on the government, since the claim did not purport to be for the period October 18 to December 31, 1918.

In view of our conclusion that no claim for credit was filed with respect to the taxable period involved, it is not necessary to discuss the question whether the credit of $20,843.42 and the refund of $1,075.01 were allowed on May 27, 1924, when the Commissioner signed the original schedule of refunds and credits, or on August 28, 1924, when he signed a supplemental schedule. If the allowance was made May 27, 1924, the Revenue Act of 1921 was then in force, and no interest would be payable under section 1324 of that act (42 Stat. 316) unless a claim was filed therefor and allowed. If the allowance was made August 28, 1924, which was after the 1924 act went into force, no interest may be recovered for the reason that on that date the allowance was barred by the statute of limitation.

The petition must be dismissed. It is so ordered.